USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/14/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
JIMMY SANTIAGO, :
:
                            Plaintiff, :      17 Civ. 5149 (LGS)
:
           -against- :      **OPINION AND ORDER**
:
NANCY BERRYHILL, Acting Commissioner :
of Social Security, :
:
                            Defendant. :
:
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Jimmy Santiago filed this action against the Acting Commissioner (the "Commissioner") of the Social Security Administration July 7, 2017, seeking review of the final decision of Administrative Law Judge Seth Grossman (the "ALJ") denying him benefits under the Social Security Act (the "Act"). Magistrate Judge Ona T. Wang issued a Report and Recommendation (the "Report"), recommending that the Court grant Defendant's motion for judgment on the pleadings and deny Plaintiff's motion for summary judgment. Plaintiff objected to the Report. For the following reasons, Plaintiff's motion for summary judgment is granted insofar as the case is remanded to the ALJ for proper application of the treating physician rule, and the Commissioner's motion for judgment on the pleadings is denied.

## I. BACKGROUND

      The following facts are taken from the administrative record and the parties' submissions. At issue is Plaintiff's application for disability benefits under Title II of the SSA.

### A. Plaintiff's Medical History

#### 1. Dr. Steven Pacia, M.D., Treating Physician

Dr. Steven Pacia, a neurologist, began treating Plaintiff on May 26, 2010. Plaintiff told Dr. Pacia, his treating physician, that he had experienced seizures since he was a child, and these symptoms continued during his adolescence, averaging about four seizures per year. Dr. Pacia saw Plaintiff every six months for follow-up appointments. On July 8, 2013, Dr. Pacia completed a "Disability Claim Form" and stated that the primary condition affecting Plaintiff's functional capacity was "primary generalized epilepsy" and that his secondary diagnosis was "memory loss." He stated that Plaintiff had suffered from seizures since he was a child, and since January 2013, he "has not possessed the cognitive capacity to perform the duties required to secure gainful employment."

On January 28, 2015, Dr. Pacia filled out a "Seizures Impairment Questionnaire" in which he opined that Plaintiff suffers from a "permanent [and] life[]long condition that will require lifelong medication [and] monitoring with resulting persistent cognitive impairment." He stated that the frequency of Plaintiff's seizures is "variable [but] well controlled in recent months." Dr. Pacia concluded that Plaintiff's symptoms are severe enough to "constantly" interfere with his attention and concentration, that Plaintiff is incapable of performing a "low stress" job because stress is a precipitating cause of his seizures and that he has short term memory impairment. He also stated that Plaintiff's medications interfere with short-term memory and concentration.

In a letter dated the same day, Dr. Pacia stated that his concerns about Plaintiff's short-term memory had been confirmed by a neuropsychological examination performed by Dr. Virginia de Sanctis. He specified that memory loss resulted from "organic . . . impairment"

caused by epilepsy and the "high dose" medication required to control his epilepsy. From these observations, Dr. Pacia concluded that Plaintiff lacked the cognitive capacities to perform duties required for gainful employment.

### 2. Dr. Priyanka Sabharwal, M.D.

Dr. Sabharwal, a Neurology Fellow at New York University's Comprehensive Epilepsy Center, examined Plaintiff alongside Dr. Pacia. Dr. Sabharwal observed that Plaintiff was "having [a] terrible time with his short term memory." She opined that Plaintiff should avoid situations that enhance seizure recurrence, including "undue stress."

### 3. Dr. Virginia Ann de Sanctis, Ph.D., Psychologist

On June 7, 2013, at Dr. Pacia's request, Dr. de Sanctis examined Plaintiff and prepared a "Neuropsychology Consultation Report" that comprehensively evaluated Plaintiff's current cognitive and behavioral functioning. After performing a series of tests, Dr. de Sanctis concluded that Plaintiff's "neuropsychological abilities showed marked variability with scores ranging from impaired to high average." She stated that Plaintiff has neuropsychological deficits in "aspects of verbal fluency, learning, and memory, with more minor difficulties in attention, working memory, and confrontation naming." In making this conclusion, Dr. de Sanctis opined that "elevated levels of stress, sleep problems, symptoms of anxiety and depression, as well as prescription drug use may be important contributing factors to consider as attention and working memory skills are particularly vulnerable to these factors."

### 4. Dr. Marilee Mescon, Consulting Internal Medicine Doctor

On October 31, 2013, Dr. Marilee Mescon, an internal medicine physician, examined Plaintiff at the request of New York State Division of Disability Determination. She conducted a consultative "Neurologic Examination." Dr. Mescon concluded that although Plaintiff suffers

from memory impairment, there was "[n]o suggestion of impairment in insight or judgment," and that his "mood and affect" were appropriate. She also concluded that Plaintiff can sit and stand, but he cannot not climb, push, pull or carry heavy things, work at heights or drive a motor vehicle.

### 5. Dr. Fredelyn Damari, Ph.D., Psychologist Consultative Examiner

On October 13, 2013, Dr. Fredelyn Damari examined Plaintiff for a consultative "Psychiatric Evaluation." Dr. Damari examined Plaintiff and found that he was cooperative and his speech was normal. Dr. Damari found that Plaintiff's attention and concentration and recent and remote memory skills are "mildly impaired." She also stated that Plaintiff is "moderately impaired" in his ability to deal with stress. She concluded that Plaintiff can perform simple tasks independently.

### 6. Dr. T. Harding, Ph.D., State Agency Psychological Consultant

On November 18, 2013, Dr. T. Harding, a state agency psychological consultant, reviewed the record evidence and completed a "Mental Residual Functional Capacity Assessment." She determined that Plaintiff is able to understand, remember and carry out very short and simple instructions. Dr. Harding also stated that Plaintiff is "moderately limited" in his ability to maintain attention and concentration for extended periods and to complete a normal workday without interruption from psychologically based symptoms.

**B.** **Social History**

Plaintiff completed a "Function Report" on October 21, 2013. In that report, he made the following statements about his daily life. During the day, Plaintiff takes his medication, speaks on the phone and watches television. Plaintiff suffers from insomnia because he is stressed from not working. Although he lives alone, his son visits him several days a week. Plaintiff uses

4

post-it notes and his phone to remember things, and he pre-fills his medication for the week in Monday to Friday packets. Sometimes, he forgets to brush his teeth. He prepares meals that require boiling water, but sometimes he forgets to turn off the stove. He used to keep the house clean but no longer can because he suffers from headaches that prevent him from doing chores. Plaintiff can go out alone, but he is afraid to leave the house alone on "bad days." Nevertheless, Plaintiff is able to pay bills, count change and handle a savings account. Although he enjoys playing golf, it is now "trying." He also plays chess, darts, and pool "when he is up to it." Plaintiff suffers from migraines, slow speech or stuttering and an inability to remember things or pay attention.

### C. Proceedings before ALJ

On September 10, 2015, Plaintiff appeared for an administrative hearing with an attorney. Plaintiff reported that he has short-term memory issues and needs to set reminders on his phone to remember things. He also stated that he routinely feels drowsy and has an upset stomach as a result of his medication, requiring him to lie down for thirty to forty-five minutes every day. Plaintiff also testified that he is able to drive but rarely does so.

### D. ALJ's Report

On February 12, 2016, the ALJ issued a decision concluding that under the relevant SSA regulations, Plaintiff is not disabled. His opinion followed a five-step process outlined in the administrative guidelines to the SSA to make this determination.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability.

At step two, the ALJ concluded that Plaintiff suffers from anxiety, depression and seizures/epilepsy, all of which qualify as severe impairments.

5

At step three, the ALJ determined that Plaintiff's impairments are not severe enough to qualify Plaintiff as disabled. As a result, the ALJ analyzed Plaintiff's residual functional capacity ("RFC"). The ALJ relied on his own observations of Plaintiff, opinion evidence from Plaintiff's treating physician, other physicians who examined him and consultative experts. He assigned Dr. Harding's opinion "significant weight," noting that her observations were based on a "thorough" review of the medical record and "comprehensive understanding of the agency rules and regulations," although she did not examine Plaintiff. In assigning Dr. Damari's opinion "good weight," the ALJ stated that Dr. Damari's observations were consistent with Plaintiff's allegations. The ALJ gave Dr. Mescon's opinion "good weight" and stated that "her expertise as a neurologist" gave her insight into Plaintiff's capabilities. However, the ALJ assigned Dr. Pacia's opinion "little weight," and by way of explanation, stated that "there is little, if any, testing contained in the record that would suggest [Plaintiff] is incapable of simple tasks." Dr. Pacia is also a neurologist and is Plaintiff's treating physician. The ALJ concluded that Plaintiff has the RFC to perform jobs that involve a "full range of simple tasks with some more complex tasks or instructions."

At step four, the RFC determination led the ALJ to conclude that Plaintiff is unable to perform his past relevant work.

At step five, based on Plaintiff's RFC, the ALJ concluded that Plaintiff can still perform jobs that exist in significant numbers in the national economy. Accordingly, the ALJ opined that Plaintiff is not disabled.

### E. Judge Wang's Report

The Report recommends that the Commissioner's cross-motion for judgment on the pleadings be granted, in effect affirming the Commissioner's decision that Plaintiff is not entitled

to disability benefits.  With respect to the so-called treating physician rule that derives from 20 C.F.R. § 404.1527(c), the Report finds that remand is not warranted by the ALJ's failure to give controlling weight to the opinions of Plaintiff's treating physician, Dr. Pacia.  The Report states that, although "the ALJ did not expressly address each factor relevant to evaluating a treating physician's opinion," he provided "little weight" to Dr. Pacia's opinions because they were "inconsistent with other substantial evidence, including the medical evidence and Plaintiff's own statements."  The Report states that although Dr. Pacia's conclusions rely on Dr. de Sanctis's neuropsychological examination, there is "nothing in her conclusions that supports Dr. Pacia's opinion that Plaintiff is so cognitively impaired that his symptoms would 'constantly' interfere with his attention and concentration."  The Report also states that "Dr. Damari's examination findings and opinion supported the ALJ's RFC finding that Plaintiff could perform simple tasks."  Finally, the Report concludes that Plaintiff's testimony corroborates the ALJ's finding that Plaintiff can perform simple tasks.

### F. Plaintiff's Objections

In the Objection to the Report, Plaintiff argues that Judge Wang did not consider that the ALJ failed to follow the treating physician rule because he gave "little weight" to the opinions of Plaintiff's treating physician, Dr. Pacia, and gave "significant weight" to the opinion of the state agency psychological consultant.  He further contends that Dr. Pacia's opinion is "well-supported and not inconsistent with other substantial evidence [on the] record."

## II. STANDARD

### A. Reviewing Magistrate Judge Report and Recommendations

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The district court

7

"may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b) and citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). Even when exercising *de novo* review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x. 230, 232 (2d Cir. 2006) (summary order); *accord Rapaport v. Comm'r of Soc. Sec.*, No. 16 Civ. 2617, 2018 WL 3122056, at *2 (S.D.N.Y. June 26, 2018).

B. Reviewing ALJ Opinions

A claimant is disabled "if she is unable to . . . engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *McIntyre v. Colvin*, 758 F.3d 146, 149–50 (2d Cir. 2014) (internal quotation marks omitted); *accord Reyes v. Berryhill*, No. 17 Civ. 01851, 2018 WL 3728933, at *4 (S.D.N.Y. Aug. 6, 2018). A disability determination of the ALJ may be set aside only if "it is based upon legal error or is not supported by substantial evidence." *Rosa v. Callahaa*, 168 F.3d 72, 77 (2d Cir. 1999); *accord Greenhaus v. Berryhill*, No. 16 Civ. 10035, 2018 WL 1626347, at

8

*7 (S.D.N.Y. Mar. 30, 2018). "Substantial evidence is more than a mere scintilla. . . . It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (internal quotation marks removed); *accord Mauro v. Berryhill*, 270 F. Supp. 3d 754, 759 (S.D.N.Y. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### C. Treating Physician Rule

Under the Act's treating physician rule, a treating physician's opinion is entitled to controlling weight as long as it is supported by medical evidence and is not inconsistent with other substantial evidence in the record. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). "The opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, [including] the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord Gonzalez v. Comm'r of Soc. Sec.*, No. 17 Civ. 1976, 2018 WL 4054866, at *13 (S.D.N.Y. Aug. 24, 2018). This is because "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Burgess*, 537 F.3d at 128 (alteration in original) (internal quotation marks omitted); *accord Nazario v. Berryhill*, No. 16 Civ. 01091, 2018 WL 3475471, at *4 (S.D.N.Y. July 18, 2018). "However, not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Burgess,* 537 F.3d at 128. A consulting physician's opinions or report are typically given limited weight because "consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Cruz v. Sullivan*, 912

9

F.2d 8, 13 (2d Cir. 1990) (internal quotation marks omitted); *Marcano v. Berryhill*, No. 16 Civ. 08033, 2018 WL 2316340, at *18 (S.D.N.Y. Apr. 30, 2018).

The regulations state that when an ALJ refuses to afford controlling weight to the medical opinion of a treating physician, the ALJ should consider, *inter alia*, the following factors when determining the appropriate weight to give to the opinion: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole and (4) whether the opinion is from a specialist and (5) any other significant factors. 20 C.F.R. § 404.1527(c)(2) – (6). The ALJ must "explicitly consider" the factors outlined in the regulation, *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *accord Tilles v. Comm'r of Soc. Sec.*, No. 13 Civ. 6743, 2015 WL 1454919, at *29 (S.D.N.Y. Mar. 31, 2015). In analyzing the factors, the Act's regulations require that the ALJ "give good reasons" for the weight afforded to the treating source's opinion, and failure to do so warrants remand. 20 C.F.R § 404.1527(c)(2); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir 2010) ("The ALJ was required either to give [the treating physician's] opinions controlling weight or to provide good reasons for discounting them."); *accord Ogirri v. Berryhill*, No. 16 Civ. 9143, 2018 WL 1115221, at *8 (S.D.N.Y. Feb. 28, 2018).

## III. DISCUSSION

Plaintiff's objection to the Report's application of the treating physician rule is sustained. In giving "little weight" to the opinion of Plaintiff's treating physician, the ALJ misapplied the treating physician rule because he did not analyze all the factors outlined in 20 C.F.R. § 404.1527(c), insufficiently analyzed one of the factors, and failed to consider other factors that bolster the weight of Dr. Pacia's opinion. Based on a *de novo* review of the administrative record and applicable legal authorities, the Report is rejected with respect to the conclusions it

10

draws regarding the ALJ's application of the treating physician rule and the resulting recommendation to grant Defendant's motion.

### A. The Factors the ALJ Should Have Considered

The ALJ did not consider at least three factors outlined in 20 C.F.R. § 404.1527(c) before deciding to afford "little weight" to Dr. Pacia's opinion: the frequency of examination and the length, nature and extent of the treatment relationship, the evidence in support of the treating physician's opinion and whether the opinion is from a specialist.

First, the ALJ's decision does not analyze the nature and length of the treating relationship between Plaintiff and Dr. Pacia. At the time Dr. Pacia gave his opinion about Plaintiff's condition, he had been treating Plaintiff for five years and, based on the visits recorded in the record alone, examined him seven times. *See Ogirri*, 2018 WL 1115221, at \*12 ("Given that [the treating physician,] Dr. Tse[,] had been treating Ogirri for three months and had seen him three times when she provided her opinion, she was likely to obtain a more longitudinal picture of Ogirri's condition than consultative examiners who saw Ogirri for only a few hours, or than Dr. T. Harding, who did not examine Ogirri and only reviewed the record . . . ."). He also administered Plaintiff's drug regimen, made critical decisions about dosage and drug type depending on the treatment's effects on Plaintiff's condition and was familiar with the precipitating causes of Plaintiff's seizures. The ALJ's decision does not reference these facts in deciding to assign Dr. Pacia's opinion "little weight."

Ignoring this prior history, the ALJ's decision treats Dr. Pacia's opinion on par with consultative experts who examined Plaintiff on only one occasion for a short period of time. *Nazario*, 2018 WL 3475471, at \*6 (holding that the ALJ's crediting consultative experts over the treating physician was "particularly troubling given the relatively limited scope of their

interactions with [the p]laintiff"). Dr. Harding, whose opinion the ALJ assigned the most weight, did not examine Plaintiff at all. *See Restuccia v. Colvin*, No. 13 Civ. 3294, 2014 WL 4739318, at *8 (S.D.N.Y. Sept. 22, 2014) (the ALJ's reliance on consultative source was erroneous, in part, because the expert did not examine the patient at all).

Second, the ALJ did not consider evidence in the record that supports Dr. Pacia's opinions before deciding to afford his opinion "little weight." Dr. Pacia's assessment that Plaintiff cannot perform gainful activity was informed, in part, by the observation that Plaintiff should avoid situations of stress because it is a precipitating factor to his seizures. Dr. Sabharwal, a neurology fellow at New York University's Comprehensive Epilepsy Center, examined Plaintiff and similarly concluded that he should avoid any situations with "undue stress" to manage this epilepsy properly. Despite being a neurology fellow at an epilepsy treatment center, the ALJ's opinion does not mention Dr. Sabharwal's treatment conclusions at all. *See Castillo v. Colvin*, No. 13 Civ. 5089, 2015 WL 153412, at *21 (S.D.N.Y. Jan. 12, 2015) ("No mention was made of Dr. Rosario or the psychotherapists who treated plaintiff[,] implying that no weight was given to that evidence."). Dr. Damari, a psychologist, also raised the issue of stress, stating that Plaintiff is "moderately impaired" in his ability to deal with it. Dr. de Sanctis, a psychologist upon which Dr. Pacia's opinion in part relied, similarly stated that Plaintiff's "attention and working memory skills are particularly vulnerable" to "elevated levels of stress." These opinions support Dr. Pacia's conclusion that Plaintiff's employment capabilities are restricted by his inability to cope in environments that cause even low stress. Similarly, just as Dr. Pacia stated that Plaintiff is unable to undertake gainful employment, Dr. Harding concluded that Plaintiff is moderately limited in his ability to complete a workday without unreasonable rest periods or breaks. The ALJ did not address this evidence supporting Dr. Pacia's opinions, and

the ALJ failed to give "good reasons" why, in spite of it, Dr. Pacia's opinion deserves "little weight."

Third, the ALJ did not consider that, as a neurologist, Dr. Pacia is a specialist in brain function and is particularly qualified to assess how stress impacts Plaintiff's epilepsy, and how his medications impact his short-term memory. *See Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 508 (S.D.N.Y. 2014) (holding that the ALJ erred in failing to consider the treating physician's status as a specialist when overriding their opinion in favor of non-specialists). Instead, the ALJ incorrectly identified Dr. Mescon as a neurologist, when in fact she is an internist, and afforded her opinion "good weight." *See Cabreja v. Colvin*, No. 14 Civ. 4658, 2015 WL 6503824, at *29 (S.D.N.Y. Oct. 27, 2015) (ALJ erred in not considering that "Dr. Mitamura's specialty is in orthopedic surgery . . . , which is centrally relevant to [the plaintiff's] injuries, much more so than Dr. Pelczar-Wissner's status as an internist.") (internal citation omitted).

In not explicitly considering these factors before assigning "little weight" to Dr. Pacia's opinion, the ALJ committed legal error in his application of the treating physician rule. *See, e.g.*, *Ogirri*, 2018 WL 1115221, at *12 (holding that the ALJ did not comply with the treating physician rule when her decision cursorily concluded that the treating physician's opinion was inconsistent with the record as a whole but "made no express mention of the other factors, nor . . . appear[ed] to have considered them, despite the fact that she was obligated to do so"); *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 266 (S.D.N.Y. 2016) (remanding the case where the ALJ failed to consider "the evidence that *supported* [the treating physician,] Dr. Hameedi's[,] opinion; the length of the treatment relationship between Dr. Hameedi and [Plaintiff], including the frequency of examination; the nature and extent of the relationship; and Dr. Hameedi's

specialization"); *Ramos v. Comm'r of Soc. Sec.*, No. 13 Civ. 3421, 2015 WL 7288658, at *7 (S.D.N.Y. Nov. 16, 2015) (remanding, in part, because the ALJ considered only the "consistency of the [treating physician's] opinion with the record as a whole" but not the other regulatory factors).

### B. The Factor the ALJ Considered

The ALJ did analyze one factor -- the extent to which Dr. Pacia's opinion is consistent with the record as a whole -- but failed to consider his entire opinion in light of the record. In assessing Dr. Pacia's opinion, the ALJ stated Dr. Pacia's conclusions about Plaintiff's stress and concentration impairments. He concluded, using Dr. de Sanctis's report, that Dr. Pacia's opinion deserves "little weight" because the record contains little evidence that Plaintiff is incapable of performing simple tasks.

Notably, Dr. Pacia's opinion did not conclude that Plaintiff lacks the cognitive ability to perform simple tasks, and his conclusions are not necessarily at odds with the ALJ's assessment. Assuming that Plaintiff can perform simple tasks,[1] if -- as Dr. Pacia concluded -- the small stresses of work can precipitate seizures, Plaintiff may still lack the RFC to engage in gainful employment. The ALJ's opinion does not provide any reason to disregard Dr. Pacia's conclusion that a seizure could be triggered even by minor stress. *Cf. Astrue*, 708 F.3d at 418–19 (ALJ erred in relying on physician's treatment note in isolation and "ignor[ing] the context of the notation").

---

[1] Dr. Pacia and other experts' assessments differ only as to the severity of Plaintiff's concentration impairment. Whereas Dr. Pacia concluded that Plaintiff's symptoms "constantly" affected his attention and concentration, Dr. Damari concluded that Plaintiff is "mildly impaired in his ability to maintain attention and concentration." Dr. de Sanctis stated that Plaintiff has "minor difficulties" in attention, while Dr. Harding stated that Plaintiff's ability to understand and remember detailed instructions was moderately limited. The ALJ also stated that Plaintiff occasionally drives and plays pool, both of which require concentration.

14

Other experts confirmed that Plaintiff is impaired in his ability to cope with stress. Dr. Sabharwal concluded that Plaintiff should avoid "undue stress" to manage his epilepsy. Dr. Damari's report also states that Plaintiff is "moderately impaired in his ability to . . . deal with stress". Dr. de Sanctis's report similarly concludes that Plaintiff's "attention and working memory skills are particularly vulnerable" to "elevated levels of stress." In failing to assess the consistency of Dr. Pacia's opinion with the opinions of other experts in light of the "full . . . treatment being administered," including the impact of stress as a precipitating factor of Plaintiff's seizures, the ALJ failed to provide "good reasons" for discounting Dr. Pacia's opinion. *See Castillo*, 2015 WL 153412, at \*22 ("[T]here is no indication that the ALJ considered Dr. Brewer's notations in the context of the full psychiatric and psychotherapeutic treatment being administered at the Emma L. Bowen center.").

On remand, the ALJ should assess Dr. Pacia's opinion, considering all aspects of the opinion, the record and the other regulatory factors.

## IV. CONCLUSION

For the foregoing reasons, the conclusions in the Report as to the ALJ's application of the treating physician rule, and the recommendation to grant Defendant's motion, are rejected. Accordingly, the Commissioner's motion for judgment on the pleadings is DENIED, and Plaintiff's motion for summary judgment is GRANTED insofar as the case is REMANDED to the ALJ pursuant to 42 U.S.C. §405(g) for further proceedings consistent with this opinion.

The Clerk of Court is directed to close the motions at docket number 9, 11 and 13 and to close the case.

Dated: New York, New York
September 14, 2018

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE